Leonard **JENOFF**, Plaintiff,

v.

The **HEARST CORPORATION**,
Defendant.

Civ. No. H–75–692.

United States District Court,
D. Maryland.

June 27, 1978.

H. Russell Smouse and George F. Pappas, Baltimore, Md., for plaintiff.

1. Diversity jurisdiction exists in this case.

2. *The News American* is a daily newspaper which is widely disseminated in the Baltimore metropolitan area.

Theodore Sherbow, William A. Agee and Sherbow, Shea & Doyle, Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

ALEXANDER HARVEY, II, District Judge:

In this libel action,[1] plaintiff Leonard Jenoff is seeking damages from the Hearst Corporation, which publishes *The News American*.[2] Plaintiff's second amended complaint alleges in forty-six Counts that seven different stories which appeared in various editions of defendant's newspapers between December 22 and December 31, 1974 and on February 7, 1975 were libelous. Each odd-numbered Count asserts a cause of action based on the alleged malicious publication by defendant of defamatory statements, and each even-numbered Count asserts a cause of action based on the alleged negligent publication by defendant of the same statements. Compensatory damages are sought in the twenty-three even-numbered Counts, and compensatory and punitive damages are sought in the twenty-three odd-numbered Counts.

The articles[3] which form the basis of plaintiff's complaint contained various statements relating to plaintiff's activities as a "police spy." At the time that the articles were written, there was pending in a state court in Maryland a notorious criminal case involving one John E. (Liddie) Jones, who had been accused of being a major heroin dealer in the Baltimore area. William Carrier, a Baltimore lawyer, was one of Jones' attorneys. The newspaper articles, which are the subject of this libel action and which were published on December 22, 1974 and thereafter, charged, *inter alia*, that plaintiff, acting for the Baltimore City Police Department, broke into Carrier's office one night in August 1974 and that two key written statements of defense witnesses disappeared from the attorney's

3. The articles were written by Michael Olesker and Joe Nawrozki, who were at the time reporters employed by the defendant.

office. Earlier articles concerning plaintiff had appeared in defendant's newspaper on December 11, 12, 13, 14 and 15, 1974, but plaintiff does not allege that these articles were libelous. These earlier articles had included statements that plaintiff was a "secret operative" of the Inspectional Services Division ("the ISD") of the Police Department and that plaintiff had "infiltrated" the offices of attorney Carrier by working as the attorney's investigator. However, these earlier articles did not state that plaintiff had broken into the attorney's office in August 1974.

Presently pending before this Court is a motion for summary judgment filed by the defendant, pursuant to Rule 56, F.R.Civ.P. Briefs in support of and in opposition to the motion, as well as numerous exhibits, affidavits and depositions, have been filed by the parties. Defendant relies on several of the depositions that have been filed and also on the affidavits of two reporters, an editor and certain individuals who were the principal sources for the articles. In opposing the pending motion, plaintiff relies on the depositions of plaintiff and of Lt. Donald Woods of the Baltimore City Police Department. This Court would note that summary judgment was granted in favor of defendant here in an earlier libel action brought in this Court by Lt. Woods, based upon the same series of articles. *Woods v. Hearst Corporation*, 2 Med.L.Rptr. 1548 (D.Md.1977). However, this case presents issues quite different from those in the *Woods* suit.

What must be decided here is the proper standard which the Court should apply in determining whether defendant is liable under the facts of this case. In particular, this Court must decide whether the test of *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) is applicable in this case. Defendant contends that police informant Jenoff was either a "public official" or a "public figure", and defendant urges this Court to adopt the actual malice

standard. *See Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). Defendant further asserts that under such a standard, it is entitled to summary judgment on this record on all Counts. Plaintiff, on the other hand, contends that he is "a private individual" under the criteria of *Time, Inc. v. Firestone*, 424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976) and *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) and that the negligence standard is therefore appropriate. *Jacron Sales Co. v. Sindorf*, 276 Md. 580, 350 A.2d 688 (1976). Plaintiff further asserts that summary judgment is not appropriate because there are disputed issues of fact both as to the negligence and the malice of defendant alleged in this case.

After a review of the briefs and the record and after hearing oral argument, this Court is satisfied that defendant's motion for summary judgment should be granted in part and denied in part. This Court would agree with plaintiff that an undercover police informant performing the duties he did here is neither a "public official" nor a "public figure."

I

*The "public official" doctrine*

■ In *New York Times v. Sullivan*, *supra*, the Supreme Court held that the First Amendment prohibits a public official from recovering damages for defamatory and false statements relating to his official conduct unless he proves that the statement was made with actual malice.[4] The plaintiff there was an elected Commissioner of the City of Montgomery, Alabama, who was held under the facts presented to be a "public official."

In *Rosenblatt v. Baer*, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966), the Supreme Court further explained the "public official" doctrine. The Court stated at page 85, 86 S.Ct. at page 676:

4. To establish actual malice, a plaintiff must prove that the statement was made with knowledge that it was false or with reckless

disregard as to its truth or falsity. 376 U.S. at 280, 84 S.Ct. 710.

It is clear therefore that the "public official" designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs.

Accordingly, the Court there held that a county commissioner in charge of a county ski recreation area could be a "public official."

█ It is now well established that a police officer may be a "public official." *Time, Inc. v. Pape*, 401 U.S. 279, 91 S.Ct. 633, 28 L.Ed.2d 45 (1971) (involving a deputy chief of detectives); *Thuma v. Hearst Corporation*, 340 F.Supp. 867 (D.Md.1972) (involving a police captain); *Woods v. Hearst Corporation, supra* (involving a police lieutenant). However, the parties have not cited, and independent research has not disclosed, any authority for the proposition that an undercover police informant is a "public official." Indeed, the very proposition is a contradiction in terms.

In extensive pretrial proceedings in this case, defendant has been permitted to engage in wide-ranging discovery pertaining to plaintiff's activities over a period of years as an undercover informant. At various times, plaintiff has supplied information to the Baltimore City Police Department, to the Federal Bureau of Investigation and to the Drug Enforcement Administration. Investigative files have been produced by these agencies and have been reviewed by counsel for defendant.[5]

A review of these files makes it abundantly clear that plaintiff was never even an employee of a state or federal law enforcement agency, much less a public one. The DEA files which have been produced indicate that plaintiff was an unpaid, cooperating informant whose involvement with the DEA ended in April 1971. From 1971 to 1973, plaintiff also supplied information to the F.B.I. In a memorandum dated November 12, 1971 prepared by F.B.I. Special Agent Roland Swanson, plaintiff was characterized as a "potential criminal informant," and plaintiff was advised that he should not consider himself an employee of the F.B.I., although he would be reimbursed for some expenses. From February 1974 to January 1975, plaintiff furnished similar information to the ISD of the Baltimore City Police Department. He was not a salaried employee of the Department but was reimbursed for expenses of approximately $423.

Defendant argues that plaintiff's status as a confidential informant was equivalent to that of an undercover police officer and that therefore plaintiff was a "public official." This contention is clearly without merit. An undercover police officer is a salaried full-time employee of a police department who, for limited periods of time, poses as a private citizen. On the other hand, plaintiff was an actual private citizen who occasionally supplied information to law enforcement agencies and who was reimbursed for some of his expenses. Indeed, plaintiff performed a function which could not be undertaken by an undercover police officer who could do no more than pretend that he was a private citizen. The very nature of plaintiff's duties required that he conduct his activities privately and as far removed from public or open scrutiny as possible.

On the record here, this Court concludes that plaintiff was not a government or public employee and that in any event, his status as a confidential informant was certainly not "of such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it." *Rosenblatt v. Baer, supra*, 383 U.S. at 86, 86 S.Ct. at 676. A confidential informant performing services of the sort involved here is neither "public" nor an "official." Plaintiff is therefore not a "public official" under *New York Times v. Sullivan, supra.*

---

5. Because of the sensitive nature of these files, they have, pursuant to Protective Orders entered by the Court, been held under seal.

## II

### The "public figure" doctrine

In *Curtis Publishing Co. v. Butts, supra,* the Supreme Court extended the actual malice standard of *New York Times v. Sullivan, supra* to "public figures." In *Rosenbloom v. Metromedia, Inc.,* 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971), a plurality of the Supreme Court went still further and concluded that the actual malice standard applies to *private* individuals as well when they become involved in areas of general or public interest. However, in the more recent cases of *Time, Inc. v. Firestone, supra,* and *Gertz v. Robert Welch, Inc., supra,* the Supreme Court expressly repudiated the *Rosenbloom* rationale and established more specific criteria for determining whether a plaintiff had the status of a "public figure." In *Gertz,* the Supreme Court stated that "extension of the *New York Times* test proposed by the *Rosenbloom* plurality would abridge [a] legitimate state interest to a degree that we find unacceptable." 418 U.S. at 346, 94 S.Ct. at 3010.

*Gertz* went on to recognize two categories of "public figures":

> In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues. In either case such persons assume special prominence in the resolution of public questions.

*Id.* at 351, 94 S.Ct. at 3013.

In that case, plaintiff Gertz was an attorney involved in civil litigation brought by a murder victim's family against the policeman who was convicted of that murder. The Supreme Court concluded that Gertz could not be considered a "public figure" in an action in which he sought damages for defamatory statements contained in a magazine concerning his role in the criminal trial. "[B]y looking to the nature and extent of an individual's participation in the particular controversy giving rise to the defamation," the Court noted that plaintiff played no role in the criminal trial and "did not thrust himself into the vortex of this public issue, nor did he engage the public's attention in an attempt to influence its outcome." *Id.* at 352, 94 S.Ct. at 3013.

More recently, in *Firestone,* the Supreme Court expressly rejected the proposition that a private individual becomes a public figure by mere involvement in a "cause célèbre." The Court there held that the wife of the scion of a wealthy industrial family did not become a "public figure" because her husband instituted divorce proceedings against her on grounds of extreme cruelty and adultery. The Court noted that under the *Gertz* test, plaintiff had not "thrust herself to the forefront of any particular public controversy in order to influence the resolution of the issues involved in it." *Id.,* 424 U.S. at 453, 96 S.Ct. at 965.

In the present case, defendant contends that while plaintiff may not be a "public figure" for all purposes, his activities as a confidential informant amount to a voluntary participation in the particular public controversy that arose concerning surveillance activities of the ISD. This argument does no more than restate the now repudiated *Rosenbloom* proposition that involvement by a plaintiff in a matter of public interest requires the application of the actual malice standard. Applying the *Gertz* and *Firestone* tests to the facts here, this Court cannot conclude that plaintiff, as an undercover police informant, thrust himself to the forefront of the public controversy concerning improper ISD surveillance activities in order to influence the resolution of the issues involved. To act in such a way would be totally inconsistent with plaintiff's role as a secret informer for the police. Plaintiff at most played a very minor role in the myriad activities of the ISD, and there is nothing in the record to indicate that plaintiff ever attempted to publicize his role or to propagandize his views on this or any other subject. This Court finds and concludes that the plaintiff was a private

individual, not a "public figure." *Time, Inc. v. Firestone, supra; Gertz v. Robert Welch, Inc., supra.*

■ Defendant also contends that prior articles about plaintiff had propelled him into the public eye and made him a "public figure." To accept such a "cause célèbre" argument would be to reinstate the *Rosenbloom* doctrine. As both *Gertz* and *Firestone* make abundantly clear, a "public controversy" is not to be equated with all controversies of interest to the public.

In claiming that plaintiff is a "public figure," defendant relies heavily on two recent decisions of the United States District Court for the District of Columbia. Neither case is in point. In *Wolston v. Reader's Digest Ass'n, Inc.,* 429 F.Supp. 167 (D.D.C.1977), the Court held that a contempt conviction of the plaintiff for his failure to appear before a grand jury investigating foreign espionage had elevated the plaintiff to the status of a "public figure" in a libel action based on comments in a book concerning his involvement in espionage. But plaintiff Jenoff took no similar actions to breach his own privacy. Defendant points out that plaintiff attended the Liddie Jones trial. But such attendance at a public trial is analogous to the attendance of the plaintiff Gertz at an inquest, a fact held insufficient to confer "public figure" status. 418 U.S. at 352, 94 S.Ct. 2997.

In *Buchanan v. Associated Press,* 398 F.Supp. 1196 (D.D.C.1975), the Court held that a private accountant's significant involvement with the Finance Committee to Re-Elect the President transformed. him into a "public figure" insofar as comment on his political activities was concerned. Again, plaintiff Jenoff had no similar voluntary political involvements of any significance.[6] Defendant relies on dicta in *Buchanan* at page 1203 in claiming that an agent of a principal that is the subject of public interest is likewise and always a "public figure." This Court does not read

the comment in question as suggesting any such expansive proposition. In any event, such a doctrine would be wholly inconsistent with the Supreme Court's command "to reduce the public-figure question to a more meaningful context by looking to the nature and extent of an individual's participation in the particular controversy giving rise to the defamation." *Gertz v. Robert Welch, Inc., supra,* 418 U.S. at 352, 94 S.Ct. at 3013.

After a review of the pertinent authorities, this Court is satisfied that plaintiff's status is closely analogous to those of the plaintiffs in *Gertz* and *Firestone,* who were held to be "private individuals." Indeed, the private status of a confidential police informant is much more apparent than that of the prominent attorney in *Gertz* or of the Palm Beach socialite divorcee in *Firestone.* Inasmuch as plaintiff is neither a "public official" nor a "public figure," the actual malice standard of *New York Times v. Sullivan* is inapplicable in this case.

### III

#### Negligence

The Maryland Court of Appeals held in *Jacron Sales Co., Inc. v. Sindorf,* 276 Md. 580, 350 A.2d 688 (1976), that in cases of private defamation, the applicable standard would be as set forth in the Restatement (Second) of Torts § 580B (Tent. Draft No. 21, 1975). That section provides as follows:

§ 580B. Defamation of Private Person

One who publishes a false and defamatory communication concerning a private person or concerning a public official or public figure in relation to a purely private matter not affecting his conduct, fitness or role in his public capacity, is subject to liability, if, but only if, he

(a) Knows that the statement is false and that it defames the other,

(b) Acts in reckless disregard of these matters, or

---

**6.** Some years before these newspaper articles were published, plaintiff was involved as a volunteer and photographer in the congressional campaign of United States Representative Parren J. Mitchell. Statements in defendant's newspaper that plaintiff "infiltrated" the campaign are not the subjects of plaintiff's libel claims asserted in this case.

(c) Acts negligently in failing to ascertain them.

The Court further held that proof of a defendant's fault must be established by a preponderance of the evidence.

■ Although it has been held elsewhere that a plaintiff in a defamation action must come forward with a more persuasive showing than other litigants in order to defeat a publisher's motion for summary judgment, *e.g., Washington Post Co. v. Keogh,* 125 U.S.App.D.C. 32, 35, 365 F.2d 965, 968 (1966), no decision of the Fourth Circuit supports defendant's contention that different and more demanding principles apply in a defamation case when a plaintiff opposes a motion for summary judgment. Of course, where the actual malice standard of *New York Times v. Sullivan* is applicable, the granting of summary judgment is the rule, rather than the exception because of the difficulty encountered by a plaintiff in showing the existence of actual malice. *Anderson v. Stanco Sports Library, Inc.,* 542 F.2d 638, 640 (4th Cir. 1976); *Time, Inc. v. Johnston,* 448 F.2d 378, at 383–84 (4th Cir. 1971). Indeed, if *New York Times v. Sullivan* were to be applied to all of plaintiff's claims in this case, summary judgment on all Counts would be entered in favor of the defendant. As more fully discussed in Part IV of this Memorandum and Order, there is no evidence in this record to support a finding of actual malice on the part of defendant or any of its employees. However, *New York Times v. Sullivan* is not applicable in this case. Where, as here, plaintiff is neither a "public official" nor a "public figure," the proper standard to be applied is that of negligence and not the strict constitutional standard of actual malice.

■ In *Phoenix Savings and Loan, Inc. v. Aetna Casualty and Surety Co.,* 381 F.2d 245 (4th Cir. 1967), the Fourth Circuit discussed in detail the principles to be applied when a trial court has before it a motion for summary judgment filed under Rule 56, F.R.Civ.P. Summary judgment should not be granted if issues of fact are involved or if conflicting inferences can reasonably be drawn from the facts established by the record. *Id.* at 249. Summary judgment is usually inappropriate when the issue of negligence is involved. *E.g., Spaulding v. Ads-Anker Data Systems-Midwest, Inc.,* 498 F.2d 517, 518 (4th Cir. 1974). This Court is satisfied that these principles apply in a libel case such as this one as well as in every other type of case.

In opposing defendant's motion for summary judgment as to the even-numbered Counts of the second amended complaint, plaintiff's primary contention is that defendant was negligent in relying on the written statement of one Delbert Malott, which was delivered to defendant's reporters by attorney William Carrier. Malott's statement, which is a purported eyewitness account of the alleged break-in of Carrier's office by plaintiff, was the principal source for defendant's articles. It is undisputed that defendant's reporters did not talk to Malott before publication of the articles. It is further undisputed that defendant's reporters were unaware that Malott had a criminal record and that attorney Carrier was then engaged in extensive criminal activity for which he was later indicted and convicted, following his plea of *nolo contendere.*

Defendant asserts that it was not negligent in publishing the "break-in" articles. It points out that attorney Carrier was at the time an apparently reputable member of the bar and that the credibility of Malott was vouched for by Carrier; that defendant's reporters made reasonable, albeit unsuccessful, efforts to verify the information; and that defendant's editors and attorneys carefully scrutinized the articles prior to publication.[7]

---

7. At the hearing on this motion, defendant contended for the first time that plaintiff's denial of the break-in allegations at his deposition was inherently incredible. However, this is not a case where the plaintiff has failed to deny the truth of defendant's articles. *Cf., Anderson v. Stanco Sports Library, Inc., supra.* The credibility of the plaintiff is for the jury to determine.

■ These facts and the conflicting inferences which arise from them present an issue concerning the negligence *vel non* of defendant and its reporters which cannot be decided on a motion for summary judgment. Whether defendant exercised due care in publishing these articles under all the circumstances here is a question which must be presented to the jury for a decision. The affidavits, exhibits and depositions now before the Court could reasonably support an inference of negligence on the part of defendant. On the other hand, the record here could likewise support an inference that defendant and its representatives exercised due care under all the circumstances. In deciding this issue, questions concerning the credibility of the witnesses will have to be resolved by the jury. Clearly, questions of credibility cannot be determined by the Court on a motion for summary judgment. *Batchelor v. Legg & Co.,* 52 F.R.D. 553, 561 (D.Md.1971).

For these reasons, this Court concludes that defendant is not entitled to summary judgment as to the even-numbered Counts of the second amended complaint. These Counts allege negligence on the part of the defendant, and the issues raised must be decided at the trial of this case.

## IV

### *Punitive damages*

■ The odd-numbered Counts, alleging malice and seeking punitive damages, present questions which are quite different. It is now well established that a plaintiff in a defamation action cannot recover punitive or exemplary damages in the absence of proof of actual malice under *New York Times v. Sullivan, supra. Gertz v. Robert Welch, Inc., supra,* 418 U.S. at 350, 94 S.Ct. 2997; *Jacron Sales Co., Inc. v. Sindorf, supra,* 276 Md. at 601, 350 A.2d 688. *Gertz* held that a "private defamation plaintiff who establishes liability under a less demanding standard than that stated by *New York Times* may recover only such damages as are sufficient to compensate him for actual injury." *Id.,* 418 U.S. at 350, 94 S.Ct. at 3012.

■ In order to recover punitive as well as compensatory damages, a private individual must meet the same strict standard of actual malice that is required for a "public official" or a "public figure" to maintain a libel action. Thus, although plaintiff in this case need prove only negligence to recover compensatory damages, he must prove actual malice in order to recover punitive damages. *Appleyard v. Transamerican Press, Inc.,* 539 F.2d 1026, 1029–30 (4th Cir. 1976), *cert. denied,* 429 U.S. 1041, 97 S.Ct. 740, 50 L.Ed.2d 753 (1977). After a review of the record here, this Court concludes, pursuant to Rule 56(c), that there is no genuine issue of fact as to whether these articles were published with knowledge that they were false or with reckless disregard of whether they were false or not. *See Time, Inc. v. Pape, supra,* 401 U.S. at 284, 91 S.Ct. 633. Insofar as liability is concerned, the only disputed issue is whether the articles were negligently published.

The standard of actual malice or its equivalent was explained by the Supreme Court in *St. Amant v. Thompson,* 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968). There the Supreme Court stated at 731, 88 S.Ct. at 1325:

> These cases are clear that reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.

In the *Thompson* case, the Supreme Court discussed the following facts and concluded that they fell short of establishing actual malice or reckless disregard for truth:

> [The publisher] had no personal knowledge of [plaintiff's] activities; [the publisher] relied solely on [a third party's] affidavit although the record was silent as to [the third party's] reputation for

veracity; [the publisher] failed to verify the information with those in the union office who might have known the facts

\* \* \*

*Id.* at 730, 88 S.Ct. at 1325. The Supreme Court held in that case that where the publisher was not aware of the probable falsity of a third party affidavit, his failure to investigate did not establish the requisite bad faith necessary to prove actual malice or its equivalent. *Id.* at 733, 88 S.Ct. 1323. In cases where the *New York Times* test of actual malice is not met, a state may permit recovery for actual damages but not for punitive damages. *Jacron Sales Co., Inc. v. Sindorf, supra,* 276 Md. at 587, 350 A.2d 688.

In the pending case, this Court is satisfied that the affidavits and depositions of defendant's reporters, the prepublication statements of the witnesses Sallow and Malott and the deposition testimony of Malott and Carrier conclusively establish the absence of actual malice. However, as previously noted, there are disputed inferences of fact concerning negligence on the part of defendant or its representatives. The present record indicates that neither the reporters nor the Executive Editor had reason to believe the articles were false. Before publication, the defendant had obtained a signed statement from Malott, dated December 16, 1974, which read as follows:

> Some time in August of 1974, I visited Mr. Leonard Jenoff at his office in the Standard Oil Building located at 501 St. Paul Place, Baltimore, Maryland 21202. At that time I did not know Mr. William Carrier. Mr. Jenoff asked me to accompany him to the 13th floor where we entered the office of a Mr. Carrier and I waited in the waiting room while Mr. Jenoff went into Mr. Carrier's private office. No one was in Mr. Carrier's office at the time since it was approximately 10:00 p.m. on a Thursday evening. Mr. Jenoff advised me that he was in partnership with Mr. Carrier in a trucking business and that he had to go into Mr. Carrier's office for some papers.
>
> Subsequent to that visit, Mr. Jenoff referred me to Mr. Carrier to handle a legal matter for him.

Defendant had also received a sworn statement from one Ronald Sallow dated December 9, 1974, which stated that plaintiff worked for the ISD. William Carrier subsequently confirmed Malott's statement by telling reporters Olesker and Nawrozki that his office had been broken into, that papers were missing and that Jenoff was not supposed to have a key.

Plaintiff contends that defendant should have investigated more thoroughly the written statement of Malott and the oral statement of Carrier. But if this contention is proved at trial to the satisfaction of the jury, no more than negligence will have been established. The failure of the defendant to have thoroughly investigated the factual basis for its articles would not as a matter of law establish actual malice or its equivalent. *St. Amant v. Thompson, supra; Time, Inc. v. Johnston, supra.*

In support of his argument that actual malice has been proved here, plaintiff relies on certain statements made by defendant's reporters before these articles were published. On the day before publication of the first article, Olesker called plaintiff and stated, among other things, "We know all about you, and you better confess." Subsequently, Nawrozki told plaintiff that he would become "the Lt. Calley of the police department," and that plaintiff would "burn" if he did not corroborate the facts concerning the alleged break-in.

On a different record and standing alone, these statements might in another case support an inference of malice. But in this case, they must be considered in the light of all the other facts in the record. The affidavits and the depositions of Olesker and Nawrozki show that no malice was involved when they acted as they did. Other than the statements themselves, plaintiff can point to no specific facts in the record indicating that the two reporters harbored any feelings of ill will towards him. *See* Rule 56(e).

Quite clearly, the reporters here were doing no more than attempting to bring pressure on plaintiff to admit the incidents.

When he declined to do so, they decided to publish the articles in any event, having satisfied themselves that a sufficient basis existed for publication. Whether they or the Executive Editor should have done more must be determined by the jury. But, when considered in the light of the other facts established by the record here, these isolated statements made by defendant's reporters and relied upon by plaintiff amount to no more than evidence of "zealous investigative reporting" on the part of Olesker and Nawrozki. *Woods v. The Hearst Corporation, supra* at 1551.

For these reasons, this Court concludes that defendant is entitled to summary judgment as to the allegations of malice in the second amended complaint. On the record here, there is no triable issue concerning plaintiff's right to recover punitive damages. The same result was reached by Judge Murray on a different record in *Woods v. The Hearst Corporation, supra,* which involved a different plaintiff but the same series of articles.

Accordingly, it is this 27th day of June, 1978, by the United States District Court for the District of Maryland,

ORDERED:

1. That defendant's motion for summary judgment be and the same is hereby granted in part and denied in part;

2. That summary judgment in favor of defendant be and the same is hereby granted as to Counts 1, 3, 5, 7, 9, 11, 13, 15, 17, 19, 21, 23, 25, 27, 29, 31, 33, 35, 37, 39, 41, 43 and 45 of the second amended complaint; and

3. That summary judgment in favor of defendant be and the same is hereby denied as to Counts 2, 4, 6, 8, 10, 12, 14, 16, 18, 20, 22, 24, 26, 28, 30, 32, 34, 36, 38, 40, 42, 44 and 46 of the second amended complaint.