**Leonard JENOFF, Appellee,**

**v.**

**The HEARST CORPORATION, Appellant.**

**No. 79–1566.**

United States Court of Appeals, Fourth Circuit.

Argued Dec. 3, 1980.

Decided March 25, 1981.

---

Theodore Sherbow (William A. Agee, Sherbow, Shea & Tatelbaum, P.A., on brief), for appellant.

George F. Pappas, Ransom J. Davis (H. Russell Smouse, on brief), for appellee.

Before BRYAN, Senior Circuit Judge, HALL and PHILLIPS, Circuit Judges.

ALBERT V. BRYAN, Senior Circuit Judge:

Judgment on a jury verdict for $50,000 in damages went for Leonard Jenoff in this libel action against the Hearst Corporation, publisher of The News American, a newspaper in general circulation in Baltimore.[1] The defamation declared on appeared in a series of articles carried in the paper on and after December 22, 1974.

Before the case proceeded to jury trial the District Court ruled on summary judgment that Jenoff is neither a "public official" nor a "public figure."[2] *Jenoff v. Hearst Corp.*, 453 F.Supp. 541 (D.Md.1978). Jenoff thus was spared the burden, imposed on plaintiffs in these categories by *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), and subsequent cases, of showing "actual malice" on the part of Hearst.[3] In this appeal Hearst again urges as grounds for reversal that Jenoff is a public official or public figure. We agree with the District Court's determination, and therefore affirm.

We need only outline the facts, as the account in the opinion below is clear and complete. During parts of 1974 and 1975 Jenoff acted as an informant for the Inspectional Services Division (ISD) of the Baltimore Police Department.[4] He was not an employee and he received no salary; he was reimbursed for some expenses. The News American began reporting on Jenoff's activities on December 11, 1974. The early articles, not claimed to be defamatory, included allegations that Jenoff had infiltrated the offices of William Carrier, an attorney then representing one John E. (Liddie) Jones in a notorious criminal case. As recounted in the articles, Jenoff had

1. Jurisdiction in this case rested on diversity of citizenship.

2. Hearst moved for summary judgment pursuant to F.R.Civ.P. 56(b). While Jenoff opposed Hearst's motion, he did not seek summary judgment himself. Both motion and reply appeared to agree that the material facts upon which the trial court was to determine Jenoff's status were not in issue.

3. In the same opinion in which it held that Jenoff is a private individual, the District Court found that Jenoff had failed to show "actual malice"; it therefore ruled out recovery by Jenoff of punitive or exemplary damages. 453 F.Supp. at 548–50.

4. Jenoff also supplied information at various times to the Federal Bureau of Investigation and the Drug Enforcement Administration. His relationship with these agencies apparently terminated before his involvement with the ISD. 453 F.Supp. 544.

posed as Carrier's investigator. The later, defamatory, articles charged that Jenoff had broken into Carrier's office in August 1974, and that written statements by key witnesses in the Jones defense had disappeared at that time.[5]

## I.

We do not rely solely on Jenoff's lack of formal government position for our conclusion that he is not a public official. It is conceivable that an individual holding no formal public position, and standing in no employment or even contractual[6] relationship with government, nevertheless may participate in some governmental enterprise to such an extent that the policies underlying *New York Times Co. v. Sullivan, supra,* would demand that he or she be classified a public official. Even were we satisfied that Jenoff's rather tenuous relationship with the ISD constituted participation in a government enterprise, however, his minor role therein would preclude the public official characterization.

*Rosenblatt v. Baer,* 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966), delineated the "public official" concept by reference to the *New York Times* concern over seditious libel:

Criticism of government is at the very center of the constitutionally protected area of free discussion. Criticism of those responsible for government operations must be free, lest criticism of government itself be penalized. It is clear, therefore, that the "public official" designation applies at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs.

... Where a position in government has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees, ... the *New York Times* malice standards apply.

*Id.* at 85–86, 86 S.Ct. at 675–676.

Responding to the suggestion that "this test might apply to a night watchman accused of stealing state secrets," *id.* at 86 n.13, 86 S.Ct. at 676 n.13, the Court rejected application of the *New York Times* standard

merely because a statement defamatory of some person in government employ catches the public's interest; that conclusion would virtually disregard society's interest in protecting reputation. The employee's position must be one which would invite public scrutiny and discussion of the person holding it, entirely apart from the scrutiny and discussion occasioned by the particular charges in controversy.

*Id.* This discussion is particularly instructive. Like the night watchman, the police informant may abuse his position and work great mischief; also like the night watchman, the informant who has no more "substantial responsibility for or control over the conduct of governmental affairs" than did Jenoff here, does not occupy a position inviting scrutiny and discussion apart from that occasioned by the charges in controversy. The District Court noted Jenoff's "very minor role in the myriad activities of the ISD," *Jenoff v. Hearst Corp.,* 453 F.Supp. at 545; this, we conclude, removes him from the "public official" pale, even if his lack of formal governmental affiliation does not.

---

**5.** While Jenoff admits that he passed information concerning Carrier to the ISD, this information apparently related not to the Jones trial, but to Carrier's own criminal activities.

**6.** In *Arctic Co. v. Loudoun Times Mirror,* 624 F.2d 518 (4th Cir. 1980), *cert. denied,* —— U.S. ——, 101 S.Ct. 897, 66 L.Ed.2d 827 (1981), the Court noted that a consultant to a government entity could in some circumstances be considered a public official; nevertheless, after considering the duration of Arctic's relationship with the government, the discretion allowed it, and the degree of its control over government affairs, the Court determined that the firm had not relinquished its private status.

## II.

■ The conclusion that a defamation plaintiff is a public figure may rest on two alternative bases:

In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues. In either case such persons assume special prominence in the resolution of public questions.

*Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 351, 94 S.Ct. 2997, 3013, 41 L.Ed.2d 789 (1974).

■ Hearst attempts to characterize Jenoff as a "limited-purpose" public figure. In explaining why this attempt must fail, it is helpful at the outset to recall the rationale advanced by *Gertz* for distinguishing in the first instance between private individuals and public figures. "Private individuals are ... more vulnerable to injury, and the state interest in protecting them is correspondingly greater," because they lack the "access to the channels of effective communication" generally available to public figures for self-help. *Id.* at 344, 94 S.Ct. at 3009. Moreover, a "compelling normative consideration," *id.*, separates public and private defamation plaintiffs:

For the most part those who attain [public figure] status have assumed roles of especial prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved. In either event, they invite attention and comment.

7. The same series of articles that focused on Jenoff simultaneously generated the specific controversy concerning the activities of the ISD. Of course, domestic spying and the use of police informants were and are of general pub-

*Id.* at 345, 94 S.Ct. at 3009. *Accord, Wolston v. Reader's Digest Ass'n,* 443 U.S. 157, 164, 99 S.Ct. 2701, 2706, 61 L.Ed.2d 450 (1979). The dissonance between the category as described and the facts of Jenoff's position seems apparent.

Jenoff enjoyed no special access to the media, other than that which may have been created by the defamatory publications. Similarly, he assumed no prominence in any public controversy, except as a result of the charges levelled against him. It is established that "those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure." *Hutchinson v. Proxmire,* 443 U.S. 111, 135, 99 S.Ct. 2675, 2688, 61 L.Ed.2d 411 (1979).

If a particular public controversy existed at all prior to the defamatory articles,[7] it can hardly be said that Jenoff's participation therein was voluntary. His assumption of the informant's role cannot constitute voluntary entry into public debate over the role of informants unless we are to hold that all informants, by virtue of that status, become public figures. The use of such "subject-matter classifications" to define the contours of constitutionally protected defamation has been authoritatively rejected. *See Hutchinson v. Proxmire,* 443 U.S. 111, 135, 99 S.Ct. 2675, 2688, 61 L.Ed.2d 411 (1979); *Time, Inc. v. Firestone,* 424 U.S. 448, 456, 96 S.Ct. 958, 966, 47 L.Ed.2d 154 (1976).

Finally, whatever attention Jenoff's activities might have invited, it is beyond dispute that he never sought thereby to influence the resolution of any public issue. Whether this in itself is determinative, *see Wolston v. Reader's Digest Ass'n,* 443 U.S. at 169, 99 S.Ct. at 2708 (Blackmun, J., concurring) ("The Court seems to hold ... that a person becomes a limited-issue public figure only if he literally or figuratively 'mounts a rostrum' to advocate a particular view"), or merely a significant factor, *see*

lic concern. However, that general concern resembles the "concern about public expenditures" rejected as a "controversy" in *Hutchinson.*

*id.* at 168, 99 S.Ct. at 2708; *Hutchinson v. Proxmire,* 443 U.S. at 111–12, 99 S.Ct. at 2675–2676; *Time, Inc. v. Firestone,* 424 U.S. at 453–54 & n.3, 96 S.Ct. at 964–965 n.3; *Gertz v. Robert Welch, Inc.,* 418 U.S. at 345, 94 S.Ct. at 3009, it is wholly absent from this case. We agree with the District Court that Jenoff remains a private individual.

### III.

■ Having escaped the requirement of showing actual malice, as a private plaintiff Jenoff had still to prove the elements of libel. The law of the State, as the District Judge advised, was laid down in *Jacron Sales Co. v. Sindorf,* 276 Md. 580, 350 A.2d 688 (1976), by adoption of the standard set forth in the Restatement (Second) of Torts § 580B (Tent. Draft No. 21, 1975), as follows:

> § 580B. Defamation of Private Person
>
> One who publishes a false and defamatory communication concerning a private person or concerning a public official or public figure in relation to a purely private matter not affecting his conduct, fitness or role in his public capacity, is subject to liability, if, but only if, he
>
> (a) Knows that the statement is false and that it defames the other,
>
> (b) Acts in reckless disregard of these matters, or
>
> (c) Acts negligently in failing to ascertain them.

Of these three predicates of liability the District Judge posited recovery on subsection (c). 453 F.Supp. at 548.

■ In a charge that was comprehensive, precise and correct in its definitions, and expressed throughout in simple language, the District Court instructed the jury as to the elements of defamation, the allocation of burdens of proof, and the method by which damages were to be proved and calculated. Particularly, the Court charged that to find for Jenoff they must believe that he had shown by a preponderance of the evidence that Hearst's publication of the statements was negligent, that the statements were false and defamatory, and that the statements caused Jenoff's injury. The verdict fulfilled these exactions.

Hearst raises numerous objections both to the charge and to various evidentiary rulings made in the course of trial. We have carefully examined the record, and perceive no error of law or insufficiency of evidence. The verdict and judgment on appeal will not be disturbed.

Affirmed.