Merle W. DAMERON, Plaintiff,

v.

WASHINGTON MAGAZINE, INC., et al., Defendants.

Civ. A. No. 83–1248.

United States District Court, District of Columbia.

Dec. 21, 1983.

Timothy M. Biddle, Sally A. Buckman, Crowell & Moring, Washington, D.C., for plaintiff.

Michael H. McConihe, Hanson, O'Brien, Birney & Butler, Washington, D.C., Peter F. Axelrad, David E. Beller, Frank, Bernstein, Conaway & Goldman, Baltimore, Md., for defendants.

## OPINION

HAROLD H. GREENE, District Judge.

This is a libel action. As part of a story on the ill-fated Air Florida flight which crashed into a bridge over the Potomac, *Washingtonian* magazine wrote an article dealing in a general vein with airplane crashes and air safety. As part of that article, the magazine published this statement:

> Since then—despite hair-raising talk among controllers about computer malfunctions, fatigue-induced errors, and reports of "near misses' in midair—it is believed that no major crash has been caused solely by controller errors. They have been assigned partial blame in a few accidents, including the 1974 crash of a TWA 727 into Mt. Weather in Virginia upon approach to Dulles (92 fatalities) . . . .

Plaintiff was the sole air traffic controller on duty responsible for the approach of the TWA 727 (Flight 514) which crashed into Mt. Weather. He claimed that the language referred to above was false and defamatory and he sued for libel. Presently pending before the Court is defendants' motion for summary judgment.

A number of defenses are presented as part of the motion. Although it is not necessary, in view of the Court's disposition of the motion, to make a definitive decision on these matters,[1] in the Court's view plaintiff is not a public figure[2] or a

1. The Court's views are recorded, however, in the event that there is an appeal.

2. *Wolston v. Reader's Digest Association, Inc.,* 443 U.S. 157, 99 S.Ct. 2701, 61 L.Ed.2d 450 (1979); *Arctic Co. Ltd. v. Laudoun Times Mirror,* 624 F.2d 518 (4th Cir.1980); *Fleming v. Moore,* 221 Va. 884, 275 S.E.2d 632, 637 (1981); see generally, *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974);

public official,[3] and the Court also concludes that, if a conditional privilege were not applicable (see *infra* ), there would be an issue of fact on the question whether defendants acted negligently. The Court does find, however, that defendants enjoyed a conditional privilege to publish reports of governmental proceedings, and that since there is no claim of malice, their publication of the story in question does not expose them to liability.

■ A publication has a conditional privilege to publish reports of governmental proceedings. See *Phillips v. The Evening Star Newspaper Company*, 424 A.2d 78 (D.C.App.1980); Eldredge, *The Law of Defamation* 419–27 (1978); Restatement (Second) of Torts § 611 (1976). This privilege may be overcome only either by a showing of actual malice,[4] which, of course, is not alleged here, or by a demonstration that the account does not constitute a fair and accurate report of the proceedings.

The National Transportation Safety Board investigated the Mt. Weather crash and it published an official report thereon in November 1975. The Board's three-member majority stated that the crash was caused primarily by the decision of the TWA 514 to descend to a low altitude, but it further found that the issuance of the approach clearance [by the air traffic controller] when the flight was 44 miles from the airport on an unpublished route without clearly defined minimum altitudes was one of three contributing factors. Report at 1–2. The two dissenters were even more emphatic. In their view, substantial responsibility for the accident had to be assigned to the controller's misreading of the appropriate regulations.[5] The *Washingtonian* article, of course, stated no more than that controller error had been "assigned partial blame" for this particular tragedy, and it thus accurately reported the conclusions of the Board.

■ Plaintiff concedes that a "fair comment" or "record" privilege immunizes a publication when it constitutes a "fair and substantially correct statement of the record." Memorandum at 25; see *Alexandria Gazette Corp. v. West*, 198 Va. 154, 93 S.E.2d 274, 279 (1956). However, he claims that (1) the proceeding before the National Transportation Board was not identified as such in the article, and (2) the U.S. District Court for the District of Virginia has held that plaintiff had not been negligent and had performed properly his air controller duties in connection with the 1974 crash.[6]

■ The name of the governmental body which found plaintiff partially to blame for the crash and the precise designation of the proceeding in which such finding was made are irrelevant to the privilege and to the reasons supporting it. As long as there was such a body with the requisite authority (see *infra* ) and such a proceeding, it makes no difference whether they are identified in the article.

■ As for the District Court decision, it was rendered in an unrelated, wrongful death action brought by relatives of the pilot and co-pilot of Flight 514. Defendants' conditional privilege is not defeated because there was collateral litigation in which a court made a finding at odds with

*Waldbaum v. Fairchild Publications Inc.*, 627 F.2d 1287 (D.C.Cir.1980).

3. *Jenoff v. Hearst Corp.*, 644 F.2d 1004 (4th Cir. 1981); see generally *Rosenblatt v. Baer*, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966). Contrary to defendants' assertion, not every individual performing work which "citizens have entrusted to government" (Memorandum at 12) is a public official within the meaning of the defamation laws.

4. *Phillips v. Evening Star, supra*, 424 A.2d at 87.

5. Report at 45–52. At deposition, plaintiff conceded that his actions were, in the opinion of the National Transportation Safety Board, a contributing cause of the accident.

6. That decision was affirmed by the U.S. Court of Appeals for the Fourth Circuit.

that of the governmental body whose proceedings defendants accurately reported.[7]

The National Transportation Safety Board is an agency established by the Congress for the task of ascertaining the causes of transportation disasters, particularly in the air traffic field, and it publicizes its findings broadly in order to foster public understanding of safety issues.[8] Discussion and comment regarding those findings is in the public interest. Such discussion would be seriously jeopardized if a publication were subjected to the hazards of a defamation action upon reporting the Board's findings merely because another tribunal, faced with different issues and operating under different standards of proof, came to a conclusion at odds with that reached by the Board.[9]

Plaintiff's underlying claim in opposition to the defense of publication of a governmental proceeding—as to the other defenses—is that factual disputes exist and that summary judgment should therefore be considered only gingerly. It is not clear what factual dispute there is regarding the defense of fair reporting of a governmental finding. Plaintiff's only point in that regard appears to be that fact-finders may differ as to whether the statement in the *Washingtonian* was a fair and accurate statement of the record of the NTSB report. Summary judgment is more appropriately granted in defamation actions than in other circumstances in order that the harassment that might otherwise chill essential First Amendment freedoms may be avoided. See, *e.g., Washington Post v. Keogh,* 365 F.2d 965, 968 (D.C.Cir.1966); *Nader v. de Toledano,* 408 A.2d 31, 43 (D.C.App.1979). The language of the re-

port of the NTSB so clearly supports the statement in the *Washingtonian* that air traffic controllers[10] were partially responsible for the crash on Mt. Weather that it would be inconsistent with the principles discussed above to require the publication to undergo a trial.

Defendants' motion for summary judgment will be granted.

---

7. It is not clear whether defendants could even reasonably have found an unpublished opinion of the District Court for the Eastern District of Virginia captioned under names not directly related to the NTSB investigation.

8. Compare *Phillips v. Evening Star, supra,* 424 A.2d at 89.

9. The District Court's decision in the action brought by the pilot and co-pilot did not extin-

guish the Board's conclusions. Plaintiff's argument would be more compelling if a body having jurisdiction, such as a court on direct review from the NTSB (49 U.S.C. § 1655), had reversed the Board's findings.

10. It is to be noted that plaintiff was not named in the article or otherwise identified in any way.