**KROLL ASSOCIATES, a Delaware corporation, Plaintiff,**

v.

**The CITY AND COUNTY OF HONOLULU, Keigh M. Kaneshiro, Arnold T. Morgado, Jr., Russell W. Miyake and Frank F. Fasi, Defendants.**

Civ. No. 92–00150 DAE.

United States District Court, D. Hawaii.

Sept. 27, 1993.

Phillip A. Li, Jared H. Jossem, Matt A. Tsukazaki, Torkildson Katz Jossem Fonseca Jaffe & Moore, Honolulu, HI, for plaintiff.

Michael N. Tanoue, Corp. Counsel City & County of Honolulu, Ronald B. Mun, Corp. Counsel of C & C of Honolulu, Thomas Tsuchiyama, Clyde Wm. Matsui, Kevin P.H. Sumida, Gary W.B. Chang, Matsui Chung & Sumida, Daryl M. Arakaki, Janis L. Turner, Honolulu, HI, for defendants.

### ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

DAVID ALAN EZRA, District Judge.

Defendants' motion for partial summary judgment on the issue of whether plaintiff Kroll Associates is a public figure came on for hearing in this court on September 20, 1993. Kevin P.H. Sumida, Esq. appeared on behalf of defendants the City and County of Honolulu, Russell W. Miyake and Frank F. Fasi; Jared H. Jossem, appeared on behalf of plaintiff.[1] After reviewing the motion and the supporting and opposing memoranda, the court denies the motion and finds, as a matter of law, that Kroll Associates is not a public figure for purposes of its defamation claim.

### BACKGROUND

In April 1990, defendants, through the Department of the Prosecuting Attorney, engaged plaintiff to investigate certain activities by MTL, Inc. and MTL Management, Inc., the company that operated the bus system. In June 1990, defendants executed a contract for plaintiff's investigative services for $900,000. Plaintiff notified the Prosecuting Attorney in July 1990 that it had earned fees beyond the $900,000 contract price. The Prosecuting Attorney instructed Kroll to continue its investigation of MTL.

The investigation was completed in November 1990, by which time plaintiff had done work incurring an additional $678,-380.36 in fees, over and above the initial

---

1. Defendants Arnold T. Morgado, Jr. and Keith M. Kaneshiro were previously dismissed from the action.

$900,000. Plaintiff thereafter demanded payment in full for all services performed. After approximately one year of disputes between the various branches of the city government over whether plaintiff should be paid the additional fees, Mayor Frank Fasi wrote to Prosecuting Attorney Keith Kaneshiro indicating he would not authorize payment of any of the $678,380.36 to plaintiff, despite the fact that the city council had appropriated additional funding.

After another several months of "negotiations" in which plaintiff was not paid, plaintiff filed its complaint against defendants on March 16, 1992. In the meantime, beginning in November 1990, several stories appeared in the local newspapers criticizing Kaneshiro for hiring a mainland firm to conduct the investigation and for authorizing plaintiff's cost overruns. The essence of each of the articles is that the MTL investigation had become a major political battle between the mayor, the prosecuting attorney, and at least one city council member.[2] None of the articles was initiated by or quoted any of plaintiff's representatives.

In June 1992, Mayor Frank Fasi made several allegedly "defamatory and malicious statements" in a press release published in the local newspapers. The allegedly defamatory statements are:

1. "[Councilman] Morgado, Kaneshiro and the Kroll representative got together in a conspiracy to keep the City Council and the Mayor from knowing the facts."

2. "Kroll was in effect given a blank check to charge the City whatever Kroll thought he could get away with."

3. "Morgado and Kaneshiro have no authority under the Charter, Ordinances or laws of this State to conspire with a consultant contractor to defraud the taxpayers of this City and County."

Plaintiff subsequently amended its original complaint to allege defamation.

Defendants have moved for partial summary judgment on the sole issue of whether

plaintiff is a public figure for defamation purposes.

## STANDARD OF REVIEW

■ Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party has the initial burden of "identifying for the court those portions of the materials on file in the case that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory. *Commodity Futures Trading Comm'n v. Savage,* 611 F.2d 270, 282 (9th Cir.1979). The opposing party cannot stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv.,* 809 F.2d at 630; Fed.R.Civ.P. 56(e). In a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party. *State Farm Fire & Casualty Co. v. Martin,* 872 F.2d 319, 320 (9th Cir.1989).

## DISCUSSION

Since 1964, the United States Supreme Court has recognized that some traditional common law actions for defamation may interfere with First Amendment rights of free expression. *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). To accommodate the competing interests between an individual's right to be free from defamatory falsehoods and the public's right to the freedoms of speech and press, the Court has defined some basic parameters of liability.

■ Thus, before public officials or public figures may recover damages in a common

---

**2.** Some examples of headlines include: "Kim, Kaneshiro Exchange Barbs Over MTL Probe"; "Fasi: MTL Probe Funding to End"; "Fasi Renews Attack on MTL Probe."

law defamation action, they must show that the defamatory statement was made with " 'actual malice'—that is, with knowledge that the statement was false or with reckless disregard of its truth." *Id.* at 279–80, 84 S.Ct. at 726; *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 154–55, 87 S.Ct. 1975, 1991, 18 L.Ed.2d 1094 (1967). This rule recognizes that the public has a legitimate interest in the conduct of public officials, and in the freedom of the press to engage in the uninhibited debate about their involvement in public issues and events. *Butts,* 388 U.S. at 164, 87 S.Ct. at 1996 (Warren, C.J., concurring). The rule also recognizes that public figures "usually enjoy significantly greater access to the channels of effective communication and hence have a more realistic opportunity to counteract false statements than private individuals normally enjoy." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 344, 94 S.Ct. 2997, 3009, 41 L.Ed.2d 789 (1974).

■ Where, however, the plaintiff is a private individual, and the speech concerns a matter of "public concern," states may define their own standard of liability for defamation, as long as no liability is imposed without a showing of fault. *Id.* at 347–49, 94 S.Ct. at 3011–12. This rule recognizes that private individuals are typically "more vulnerable to injury than public officials and public figures [and] more deserving of recovery." *Id.* at 345, 94 S.Ct. at 3010.

Defendants here contend that plaintiff is a public figure. The Supreme Court has identified two classes of public figures: general purpose and limited purpose public figures.

> In some instances, an individual may achieve such fame or notoriety that he becomes a public figure for all purposes and in all contexts. More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues.

*Gertz,* 418 U.S. at 351, 94 S.Ct. at 3013.

■ Whether, and for what purposes, a person is a public figure is a matter of law for the court to decide. *Rosenblatt v. Baer,* 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966). Unfortunately, determining precisely what individuals are public figures is an uncertain practice not readily susceptible to the application of mechanical rules. *See, e.g., Rosanova v. Playboy Enterprises, Inc.,* 411 F.Supp. 440, 443 (S.D.Ga.1976) ("Defining public figure is much like trying to nail a jellyfish to the wall."), *aff'd,* 580 F.2d 859 (5th Cir.1978). This inquiry becomes even more difficult where the plaintiff is a corporation, as the cases provide no clear guidelines. *See, e.g., Snead v. Redland Aggregates Ltd.,* 998 F.2d 1325, 1329 (5th Cir.1993).

■ Defendants contend that plaintiff, "by its notoriety, achievements, and search for public attention, is a public figure." (Defendants' Memorandum in Support, at 1.) Generally speaking, a person becomes a general purpose public figure only if he or she is a well-known celebrity; that is, if his or her name is a household word. *Waldbaum v. Fairchild Publications, Inc.,* 627 F.2d 1287, 1293 n. 12 (D.C.Cir.1980); *cert. denied,* 449 U.S. 898, 101 S.Ct. 266, 66 L.Ed.2d 128 (1980). As the Supreme Court stated:

> Absent clear evidence of general fame or notoriety *in the community,* and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life.

*Gertz,* 418 U.S. at 352, 94 S.Ct. at 3013 (emphasis added). Such persons knowingly relinquish their anonymity in return for fame or fortune. It is thus reasonable "to attribute a public character to all aspects of their lives." *Tavoulareas v. Piro,* 817 F.2d 762, 772 (D.C.Cir.1987).

Although the Ninth Circuit Court of Appeals has never squarely addressed the issue of corporations as public figures, the Fifth Circuit recently suggested several factors for a court to consider in determining whether a corporation is a general purpose public figure: (1) the notoriety of the corporation to the average individual in the relevant geographical area; (2) the nature of the corporation's business; and (3) the frequency and intensity of media scrutiny that the corporation normally receives. *Snead,* 998 F.2d at 1329.

■ Looking to these factors, the court finds that plaintiff is not a general purpose

public figure in Hawaii. Although plaintiff has been featured in national publications such as the Wall Street Journal, Newsweek, the New York Times, the Los Angeles Times, and the Financial Times, there is no evidence that plaintiff was known to the community in which it allegedly was defamed— that is, the general population of the City and County of Honolulu. Although defendants submitted no evidence of the circulations of these publications in Hawaii, the court recognizes that with the limited exception of Newsweek, these publications are not readily available to the average Hawaii resident because of distance from the mainland, time difference, and increased costs.

Furthermore, plaintiff is a closely-held corporation which specializes in business investigations. There is nothing to indicate that the average citizen in Honolulu, to whom the local newspapers are addressed, had ever even heard of Kroll Associates prior to this dispute. To the contrary, there was evidence that Kroll had worked on large cases in Hawaii prior to the MTL investigation, yet never received any publicity. In fact, Paul Leong, the Chief Budget Officer, testified in a deposition that, although he had lived in Hawaii since 1987, he had never heard of plaintiff until the MTL investigation.

■ Without evidence that plaintiff had "general fame or notoriety in the community" of Hawaii, plaintiff should not be considered a public figure for all aspects of its existence. *See Gertz*, 418 U.S. at 352, 94 S.Ct. at 3013.

■ The issue is somewhat less clear with respect to plaintiff's status as a limited purpose public figure. *Gertz* establishes a two-part analysis to determine whether an individual is a limited purpose public figure. First, does a public controversy exist? Second, what was the "nature and extent of [the] individual's participation" in the public controversy? *Gertz*, 418 U.S. at 352, 94 S.Ct. at 3013.

■ Although the Supreme Court has never explicitly identified what constitutes a public controversy, the Court has made clear that simple newsworthiness alone will be insufficient to generate such a controversy.

*Wolston v. Reader's Digest Ass'n, Inc.*, 443 U.S. 157, 168, 99 S.Ct. 2701, 2708, 61 L.Ed.2d 450 (1979). Further, purely private disputes (such as a lawsuit) whose impact is limited primarily to the parties involved, while often of interest to the public, will also be insufficient to create a public controversy. *Time, Inc. v. Firestone*, 424 U.S. 448, 455, 96 S.Ct. 958, 966, 47 L.Ed.2d 154 (1976).

> Rather, the Court, in identifying a *Gertz* public controversy, has focused its attention on those controversies involving questions of "public concern," or, in other words, those controversies raising issues that might reasonably be expected to have an impact beyond the parties directly enmeshed in the particular controversy.

*In re IBP Confidential Business Documents Litig.*, 797 F.2d 632, 645 (8th Cir.1986); *see also Trotter v. Jack Anderson Enterprises, Inc.*, 818 F.2d 431 (5th Cir.1987).

Defendants have failed to identify what "public controversy" plaintiff has thrust itself into. The court determines that it could be one of two issues: the propriety of the MTL investigation in the first place; or the obvious political dispute between Mayor Fasi, Prosecuting Attorney Kaneshiro, and Councilwoman Kim concerning Kaneshiro's hiring of plaintiff. Whatever "public controversy" plaintiff has become a part of, the court has no problem determining that plaintiff did not "voluntarily inject itself" into it. *See Gertz*, 418 U.S. at 351, 94 S.Ct. at 3013.

In *Gertz*, the plaintiff was an attorney representing clients in a civil action against a police officer convicted of murdering their son. Although there was some controversy surrounding the criminal prosecution of the police officer, plaintiff's participation in it related solely to the representation of a private client. He never discussed the criminal or civil litigation with press, nor sought any attention to influence the outcome. *Id.* at 352, 94 S.Ct. at 3013. The Court therefore refused to classify him as a public figure.

In *Hutchinson v. Proxmire*, 443 U.S. 111, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979), plaintiff was a research director and professor who had received federal funding for a research project. When a United States senator referred to plaintiff's studies as an example of wasteful government spending and gave him the "Golden Fleece of the Month Award,"

plaintiff sued for defamation. In deciding whether plaintiff was a limited purpose public figure, the Court noted that defendants never identified a particular "public controversy." *Id.* at 135, 99 S.Ct. at 2688. "[A]t most, they point to concern about general public expenditures. But that concern is shared by most and relates to most public expenditures; it is not sufficient to make Hutchinson a public figure." *Id.*

Furthermore, the Court found that plaintiff at no time "assumed any role of public prominence in the broad question of concern about expenditures." *Id.* Plaintiff merely sought and received federal funds from which he conducted research. To the extent his research became a matter of controversy, it was a consequence of defendants' own conduct. The Court stated that "those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure." *Id.* (citing *Wolston,* 443 U.S. at 167–68, 99 S.Ct. at 2707).

Likewise, in *Wolston,* the Supreme Court reversed the lower court's finding that plaintiff was a limited purpose public figure. Plaintiff was the nephew of a Russian spy who, during a grand jury investigation of Soviet agents in the United States, failed to respond to a grand jury subpoena and was cited for contempt. The Court first noted that plaintiff did not "voluntarily thrust" himself into the forefront of the controversy surrounding the investigation but, rather, was dragged unwillingly into it. *Wolston,* 443 U.S. at 166, 99 S.Ct. at 2707. Further, plaintiff never discussed the matter with the press, nor tried to influence the resolution of the issues involved; he limited his involvement to that necessary to defend himself. *Id.* at 167–68, 99 S.Ct. at 2707. Finally, the Court held that the sole fact that plaintiff's conduct was newsworthy was not sufficient to make him a limited purpose public figure. "A private individual is not automatically transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention." *Id.* at 167, 99 S.Ct. at 2707.

Finally, in a case nearly identical to the case at bar, the Fourth Circuit Court of Appeals held that a company hired as a consultant by the government was not a public figure. *Arctic Co. v. Loudoun Times Mirror,* 624 F.2d 518 (4th Cir.1980). Plaintiff, a private company, was employed by the Fairfax County Water Authority to conduct an inventory and evaluation of all historical and archaeological resources on an island where the Water Authority was planning to construct a water intake facility. The island had great historical value and was the center of a considerable rezoning controversy.

As a result of the rezoning controversy, the defendant newspaper published a story criticizing the work plaintiff performed and stating that plaintiff did not have a good reputation in archaeological circles. Plaintiff then filed a defamation action. The district court found that, although plaintiff was not a public figure, it was a public official. The Fourth Circuit reversed, finding plaintiff to be a "private person." *Id.* at 521. The court stated:

> We agree with the trial court that [plaintiff] is not a public figure in the libel context. It was not generally known in the community—in fact the defendant news reporter only became aware of its identity during the preparation of the news story—and did not "press itself" into the public controversy over the use of Lowes Island. It merely performed a narrowly-defined professional service in a highly technical field. This background and activity does not fit the definition of a public figure.

*Id.* (citations omitted).

In the instant case, plaintiff merely accepted employment as a confidential investigator of corruption within the city bus system. To the extent there was a controversy over the investigation or the propriety of the fees, defendants created the controversy by their own conduct in refusing to pay the fees and in conducting their political battle in the press. A review of the articles published prior to the allegedly defamatory statements, reveals that virtually all of them were initiated by city officials. Not once did plaintiff initiate any public communications concerning the investigation or the resulting fee dispute with the media until after Mayor Fasi made his allegedly defamatory statements.

Nor did plaintiff attempt to engage the public's attention in an attempt to influence

the resolution of the issues involved. As this court already has found, plaintiff performed the services under the belief that it would be paid. The fact that it was not paid and was forced to turn to the court for redress does not make it a public figure. *See Time, Inc. v. Firestone,* 424 U.S. 448, 454, 96 S.Ct. 958, 965, 47 L.Ed.2d 154 (1976) ("[r]esort to the judicial process ... is no more voluntary in a realistic sense than that of the defendant called upon to defend his interests in court").

### CONCLUSION

For the reasons discussed above, the court DENIES defendants' motion for partial summary judgment. In so doing, the court finds, as a matter of law, that plaintiff Kroll Associates is not a public figure for purposes of its defamation claim. *See* Fed.R.Civ.P. 26(d).

IT IS SO ORDERED.