**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-1483**

ANGELA ENGLE HORNE,

Plaintiff - Appellant,

v.

WTVR, LLC, d/b/a CBS6,

Defendant - Appellee.

**No. 17-1613**

ANGELA ENGLE HORNE,

Plaintiff - Appellee,

v.

WTVR, LLC, d/b/a CBS6,

Defendant - Appellant.

Appeals from the United States District Court for the Eastern District of Virginia, at Richmond.  John A. Gibney, Jr., District Judge.  (3:16-cv-00092-JAG)

Argued:  March 21, 2018

Decided:  June 18, 2018

Before KEENAN, WYNN, and FLOYD, Circuit Judges.

Affirmed by published opinion. Judge Floyd wrote the opinion, in which Judge Keenan and Judge Wynn joined.

---

**ARGUED:** Richard F. Hawkins, III, THE HAWKINS LAW FIRM, PC, Richmond, Virginia, for Appellant/Cross-Appellee. Conrad M. Shumadine, WILLCOX & SAVAGE, PC, Norfolk, Virginia, for Appellee/Cross-Appellant. **ON BRIEF:** Brett A. Spain, WILLCOX & SAVAGE, PC, Norfolk, Virginia, for Appellee/Cross-Appellant.

---

FLOYD, Circuit Judge:

On February 13, 2015, WTVR, LLC ("WTVR") aired a news story about a county school system hiring a felon in violation of a Virginia state law. The news story implied that the felon lied about a prior criminal conviction on a job application, thereby committing a Class 1 misdemeanor. However, Angela Engle Horne, the unidentified felon in question, had disclosed her prior felony on her job application for the Director of Budget & Finance for the county school system, and Dr. Bobby Browder, the then-superintendent, knew of her felony conviction when he hired her.

After the news story aired, Horne filed a defamation claim against WTVR. The district court granted WTVR's motion to have Horne considered a public official rather than a private citizen for this claim. It is well settled that a public official cannot "recover[] damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964). The district court granted WTVR's motion for a directed verdict, concluding that Horne failed to demonstrate that WTVR acted with actual malice in airing the allegedly defamatory news story. Horne now appeals, arguing that the district court erred in deeming her a public official, in granting WTVR's motion for a directed verdict, and also in denying her pre-trial motion to compel WTVR to disclose the identity of its confidential source. WTVR cross-appeals, arguing that the district court erred in denying its motion for summary judgment because the news story was not reasonably capable of defaming Horne and is protected by the fair report

3

privilege as a report of an official action. For the reasons that follow, we now affirm the district court's decision and dismiss WTVR's cross-appeal.

I.

On July 19, 2014, Horne applied to be the Director of Budget & Finance for the Prince George County School Board by filling out an online application. Where the application asked whether she previously had been convicted of a felony, she answered "Yes" and, as requested on the application, provided a short paragraph explaining her prior conviction for conspiracy to possess with the intent to distribute methamphetamine. The application did not ask Horne to certify that she had never been convicted of a felony and did not indicate that felons were ineligible for employment.

Browder conducted a series of interviews with Horne, during which Horne specifically asked him several times about the impact of her felony conviction. Browder represented that her previous felony conviction was not a hindrance to being hired. Horne was then hired for the position and began on September 29, 2014. On February 10, 2015, however, Horne was terminated because her prior felony conviction was a disqualifying factor under Virginia law. Va. Code § 22.1-296.1(A). Virginia law prohibits a school system from hiring a convicted felon for any position, requires an applicant to certify that he or she has not been convicted of a felony, and makes a false statement about an offense a Class 1 misdemeanor. *Id.*[1]

_____

[1] Virginia Code § 22.1-296.1(A) provides that:

4

On February 11 or 12, 2015, Wayne Covil, a senior reporter at WTVR, received a five-minute phone call from a familiar, confidential source who relayed that a felon had been hired and then fired from the school board office in Prince George County, and also may have provided a partial name of the felon. Covil then interviewed Browder, whom Covil had worked with for years on dozens of stories for WTVR. Browder told Covil that due to school system policy he could not discuss personnel matters, including that he could not confirm or deny that a felon was hired or fired.

The conversation then shifted to the hiring process. Browder conveyed that applicants are hired, then a background check is completed that can take up to eight weeks, and that prior convictions are sometimes discovered after the employee has begun working. Together, they reviewed Browder's copy of the Virginia School Law Deskbook—a book of school system policies and rules that includes a copy of the Virginia Code. Pointing to the relevant statute in the Deskbook, Browder stated that it was a Class 1 misdemeanor to provide false information on a school application. *Id.* Covil testified that he believed Browder implied that the felon at issue had lied on her job application by failing to disclose her prior felony.

---

> As a condition of employment for all of its public school employees, whether full-time or part-time, permanent, or temporary, every school board shall require on its application for employment certification (i) that the applicant has not been convicted of a felony or any offense involving the sexual molestation, physical or sexual abuse or rape of a child; and (ii) whether the applicant has been convicted of a crime of moral turpitude. Any person making a materially false statement regarding any such offense shall be guilty of a Class 1 misdemeanor . . . .

Shortly after the interview, Covil received an email from an anonymous source. The email said:

> I am a Prince George county resident. On Monday, I anonymously sent letters to each of the school board members informing them that a convicted felon was hired by the school board office. I know this because this person also lives in Prince George and I know they are a felon. I also know they work as a Director at the Prince George School Board Office. My concern is, how did this happen? Any state employee must have a background check when hired so how was this overlooked? Who allowed this to happen? Shouldn't someone take responsibility? Who at the School Board gave the OK to hire a felon. Virginia law states that a school division can not [sic] hire a convicted felon. This also happens at the same time the Superintendent gets a $10,000.00 raise. Is he really doing his job.

J.A. 910–11. WTVR's News Director, Sheryl Barnhouse, emailed Covil and told him "[w]e need to pursue" the story and to find out the name of the felon. J.A. 910. Covil and Michael Bergazzi, an Executive Producer at WTVR, then tried unsuccessfully to confirm the felon's identity by searching the internet. After finding a woman Bergazzi incorrectly thought may be the felon, Bergazzi told Covil to "ask your source if [the felon] may have been convicted of a crime in Tennessee." J.A. 908. Covil did not follow up with his source. At some point after this, believing that Horne may be the felon based on the informant's initial tip, Covil tried to call Horne, but was unable to reach her. Covil did not investigate further.

On February 13, 2015, in its lead story for the 5:30 PM newscast, WTVR ran Covil's news story. It was titled, "Source: Convicted felon worked at school board office in Central Va.," and a banner across the bottom of the screen for the duration of the broadcast read, "Felon Hired, Then Fired." J.A. 928. A print version of the story was also posted online. The story described that a felon had been hired to work in the school

6

board office, and was no longer employed. Then, Covil held a copy of the Virginia School Law Deskbook that includes the law regarding the school system's hiring policy, and shifted to a segment of the recorded interview with Browder explaining that the background check occurs after the applicant is given a job offer, and that the background check can reveal disqualifying information, including a felony conviction. The screen then displayed a copy of the online application's "yes" and "no" questionnaire for applicants to identify whether they have been convicted of various crimes. The news story ended by stating that it is a Class 1 misdemeanor to misrepresent one's criminal past in a school application while displaying the text of the relevant Virginia Code provision. *See* Va. Code § 22.1-296.1(A). The news story did not identify Horne by name or position, nor did it provide details of her prior conviction.

Two months later, Horne filed suit against the school system and Browder. On February 16, 2016, Horne filed this action against WTVR in federal court under diversity jurisdiction pursuant to 28 U.S.C. § 1332, alleging that the news story defamed her. Horne filed a pre-trial motion to compel WTVR to disclose the confidential source that provided the initial tip for the story, which the court denied. WTVR moved to have Horne deemed a "public official" and a "limited purpose public figure" for purposes of the defamation claim. The court deemed Horne a "public official," but declined to make any finding as to whether she was a "limited purpose public figure." WTVR moved for summary judgment on several grounds, including that the news story was not reasonably capable of defaming Horne and that the story was also protected by the fair report privilege as a publication of an official statement from the school spokesperson. The

7

court denied the motion for summary judgment. The case proceeded to trial, and at the close of evidence, WTVR moved for a directed verdict. The court granted the motion, concluding that Horne provided insufficient evidence that WTVR made the defamatory statements with "actual malice," as is required for defamation claims against public officials.

Horne now appeals, arguing that the district court erred in deeming her a public official, in granting WTVR's motion for a directed verdict, and also in denying her pre-trial motion to compel WTVR to disclose the identity of its confidential source. WTVR cross-appeals, arguing that the district court erred in denying its motion for summary judgment because the news story was not reasonably capable of defaming Horne and is protected by the fair report privilege as a report of an official action. We address each of the parties' arguments in turn.

## II.

## A.

We first turn to Horne's argument that the district court erred in granting WTVR's motion to deem Horne a "public official" for purposes of this defamation claim.[2] If

---

[2] At Virginia common law, a statement is defamatory per se if it: (1) "impute[s] to a person the commission of some criminal offense involving moral turpitude"; (2) "impute[s] that a person is infected with some contagious disease"; (3) "impute[s] to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment"; or (4) "prejudice[s] such person in his or her profession or trade." *Carwile v. Richmond Newspapers, Inc.*, 82 S.E.2d 588, 591 (Va. 1954) (citations omitted). Allegedly defamatory words are to be understood "according to the sense in which they appear to

Horne is a public official for purposes of the news story, and if the defamatory statements relate to her official conduct, she is required to demonstrate that WTVR acted with "actual malice" rather than negligence in order to succeed on her defamation claim. *See New York Times*, 376 U.S. at 279–80; *CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 293 (4th Cir. 2008) (stating that the application of a state's defamation law is limited by the First Amendment, including by the "actual malice" standard announced in *New York Times*, 376 U.S. at 279–80). We review the district court's determination of whether an individual is a "public official" and whether the "actual malice" standard applies de novo. *See Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 708 (4th Cir. 1991) (en banc). We are satisfied that Horne is a public official and that the actual malice standard applies to this defamation claim.

The Supreme Court has held that the "public official" designation applies "at the very least to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs." *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966) (citations omitted); *see also* Robert D. Sack, Sack on Defamation § 5:2.1, at 5–7 (5th ed. 2017) ("The public official category is by no means limited to upper echelons of government. All important government employees are subject to discussion by the people who employ them and by others who would comment on their behavior." (citations omitted)). Thus, a plaintiff

have been used," and a defamatory charge may be made expressly or "by inference, implication or insinuation." *Id.* at 592 (citations omitted).

with either actual or apparent substantial responsibility can be deemed a public official for purposes of a defamation claim. *See Rosenblatt*, 383 U.S. at 85.

In determining whether a plaintiff had apparent substantial responsibility, courts examine whether "the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance of all government employees . . . ." *Id.* at 86. In other words, to find apparent authority, "[t]he employee's position must be one which would invite public scrutiny and discussion of the person holding it, entirely apart from the scruting and discussion occasioned by the particular charges in controversy." *Id.* at 86 n.13. This inquiry is guided by the facts of the case.

Nevertheless, we find it helpful to review this Court's interpretations of the Supreme Court's guidance, and, because we have infrequently faced this issue, we supplement this understanding with the non-precedential decisions of other courts. In *Baumback v. American Broadcasting Companies, Inc.*, an unpublished case, this Court concluded that a plaintiff was a public official with apparent substantial responsibility for or control over government affairs related to timber sales because his publicly available job descriptions "created the appearance that [his] governmental responsibilities were significant," and because his "prominent role in controlling timber sales . . . was frequently in the news . . . ." 161 F.3d 1, 1998 WL 536358, at *4 (4th Cir. 1998) (unpublished table decision) (per curiam). Other courts have deemed plaintiffs in similar positions to be public officials. *See, e.g.*, *Fuller v. Brownsville Indep. Sch. Dist.*, No. B: 13-109, 2016 WL 3960563, at *13 (S.D. Tex. May 18, 2016) (Chief Financial Officer

10

and budget administrator of a school district who was responsible for allocating and tracking the district's $500 million budget was a public official because "[t]he public clearly would have an independent interest in the performance of this position, irrespective of the identity of the occupant"); *Davis v. Borskey*, 660 So. 2d 17, 21 n.6 (La. 1995) (university purchasing agent who purchased items for the university under a state-regulated purchasing process was a public official because he had "the authority to negotiate financial transactions and handle significant amounts of university funds"); *Ferguson v. Union City Daily Messenger, Inc.*, 845 S.W.2d 162, 162, 167 (Tenn. 1992) (plaintiff who held positions of "Director of Accounts and Budgets," "Finance Director," and "Purchasing Agent" for county was a public official because he had actual and apparent substantial responsibility over the conduct of the financial affairs of the county and because "[t]he efficient management of financial matters is crucial to the proper operation of government"); *Carroll v. Jones*, 74 Va. Cir. 466, 2008 WL 2594769, at *4 (Va. Cir. Ct. 2008) ("Director of Contracting for the Southeast RMC" who had authority to award government contracts and spend funds on behalf of the United States was a public official because "[i]mproper performance of governmental functions that involve significant issues is something that would create a question that the public has a significant interest in").

Conversely, in *Arctic Company, Ltd. v. Loudoun Times Mirror*, this Court concluded that a company employed as a consultant to the county water authority for a total of six months was not a "public official" because it "made no recommendations [and] participated in no policy determinations" and was "purely a fact-finder exercising

11

no judgment or discretion . . . ." 624 F.2d 518, 522 (4th Cir. 1980). Similarly, the First Circuit concluded that a psychologist working at a Veterans' Administration hospital who "did not routinely supervise, manage, or direct government operations" was not a public official. *Kassel v. Gannett Co., Inc.*, 875 F.2d 935, 940 (1st Cir. 1989); *see also Jenoff v. Hearst Corp.*, 644 F.2d 1004, 1006 (4th Cir. 1981) (police informant was not a public official, even disregarding his lack of formal governmental affiliation, because he played a "very minor role" in governmental activities); *Richmond Newspapers, Inc. v. Lipscomb*, 362 S.E.2d 32, 37 (Va. 1987) (public school teacher was not a public official because there had been no showing that she had "either influenced or even appeared to influence or control any public affairs or school policy").

Here, given her title and job description, Horne had apparent substantial responsibility over the school system's finances. Although titles are not dispositive, the title "Director of Budget & Finance" implies substantial control over the school system's budget and finances and, indeed, this position appears to be the top financial position in a school system with a nearly $60 million budget. The Director of Budget & Finance job description includes the overarching job goal "[t]o manage the financial, budgetary, and purchasing affairs of the School Division in a prudent and effective manner." J.A. 148. According to the job description, the position also requires the employee to "be comfortable presenting to the school board"; "negotiate with health and dental insurance providers"; "[o]versee Sick Bank Committee"; "[p]lan, direct, and coordinate the preparation of the School Division's annual budget"; "make expenditure projections for budget preparation"; "coordinate projections with budget"; and "[m]anage grants

12

functions and approve reimbursement requests in state grant system[.]" J.A. 148–49. Additionally, there is an entire chapter in the Virginia Code on "Public School Funds," including recordkeeping requirements, requirements to impose sufficient taxes to support educational programs, and defining penalties for violations of spending laws, Va. Code § 22.1-89 to 22.1-95, indicating the importance of the budget to both the government and the public.

We are convinced that serving as the Director of Budget & Finance, thus, created the appearance that Horne's governmental responsibilities were significant and necessarily involved discretion regarding several tasks as she managed the school system's financial affairs. This would, we believe, "invite public scrutiny and discussion of the person holding it," and provide "independent interest in the qualifications and performance of the person" in that position. *Rosenblatt*, 383 U.S. at 86, 86 n.13.

Horne argues that she lacked actual and apparent substantial responsibility and control over governmental affairs because she did not make decisions about how to spend funds but merely completed administrative functions in carrying out the budget created by the superintendent and the school board, and also because she did not complete all the functions proscribed in the job description. *See also* Appellant Br. 38 (stating that she had "no access to the public purse," "did not handle funds," and "did not have the power to change the budget line items"); *id.* at 41 (stating that she only made one comment at a

school board meeting and did so "as an adjunct to Browder").[3] This argument is unavailing. It is unnecessary for each task that the Director of Budget & Finance must complete to invite public scrutiny, and it is sufficient under these facts that the position itself invites scrutiny, regardless of whether Horne completed each anticipated task in her brief four months in the job. Consequently, we conclude that Horne is a "public official" because she has apparent substantial responsibility and control over the school system budget and finances.[4]

Having determined that Horne is a "public official," we must determine whether the allegedly defamatory statements relate to Horne's official conduct such that the "actual malice" standard applies. *See New York Times*, 376 U.S. at 279–80. This inquiry is easily satisfied. In *Garrison v. Louisiana*, the Supreme Court stated that "anything which might touch on an official's fitness for office is relevant" to his official conduct. 379 U.S. 64, 77 (1964); *see also Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 344–45

---

[3] Horne also argues that she did not have greater access to the media to counter the defamation claim than private individuals enjoy, weighing against deeming her a public official for this claim. Access to the media is only one factor courts can consider, however, and is not dispositive of the question. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 344–45 (1974). In any event, it appears that the Director of Budget & Finance has greater access to the media than a private individual would enjoy. Horne admits that the superintendent is the direct media contact for the school system, and the record indicates that the Director of Budget & Finance keeps in close contact with the superintendent. These facts, alone, suggest that Horne's position has access to the media, despite that this particular controversy involved the superintendent.

[4] We decline to determine whether Horne also had actual substantial authority as the Director of Budget & Finance, an independent ground for deeming her a public official for purposes of this defamation claim. *See Rosenblatt*, 383 U.S. at 85.

(1974) (stating that society's interest in a public official "is not strictly limited to the formal discharge of official duties"). The Supreme Court expanded on this holding in *Monitor Patriot Co. v. Roy* by asserting that a criminal charge can never be irrelevant to an official's fitness for office for purposes of applying the "actual malice" standard in defamation cases. 401 U.S. 265, 277 (1971); *see also Ocala Star-Banner Co. v. Damron*, 401 U.S. 295, 300 (1971) (holding that a perjury charge against a local mayor and candidate for a county elective post is relevant to his fitness for office). Thus, the statement that Horne committed a Class 1 misdemeanor by lying on her job application relates to her official conduct because this criminal charge is relevant to her fitness for office.

Therefore, we hold that the district court did not err in determining that Horne was a "public official" for this defamation claim, that the defamatory statements related to her official conduct, and that consequently Horne was required to prove that WTVR acted with "actual malice" to succeed on her claim.[5]

---

[5] We need not address WTVR's contention that the district court erred in declining to address its motion that Horne be declared a "limited purpose public figure," as this is an alternative ground for applying the "actual malice" standard, and we have already determined that the "actual malice" standard applies to this defamation claim. *See CACI*, 536 F.3d at 293 (stating that the "actual malice" standard from *New York Times*, 376 U.S. at 279–80, applies to defamation claims brought by public officials and public figures); *see also Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 134 (1967) (describing "public figures," generally, as those that are "involved in issues in which the public has a justified and important interest"); *Foretich v. Capital Cities/ABC, Inc.*, 37 F.3d 1541, 1552 (4th Cir. 1994) (describing "limited purpose public figures" as those "who voluntarily inject themselves into a particular public controversy and thereby become public figures for a limited range of issues" (citation omitted)).

B.

Next, Horne argues that the district court erred in concluding that she presented insufficient evidence that WTVR made the defamatory statements with "actual malice" and, thus, erred in granting WTVR's motion for a directed verdict on that basis. We disagree.

This Court reviews the grant of a Rule 50(a) motion for a directed verdict de novo. *Malone v. Microdyne Corp.*, 26 F.3d 471, 475 (4th Cir. 1994). "In considering a motion for a directed verdict, the court must construe the evidence in the light most favorable to the party against whom the motion is made." *Parker v. Prudential Ins. Co. of Am.*, 900 F.2d 772, 776 (4th Cir. 1990) (citation omitted). "Unless there is substantial evidence to support the verdict asked of the jury, the reviewing court must direct the verdict upon request. As a consequence, the case should be withdrawn from the jury when any verdict in favor of the nonmoving party necessarily will be premised upon speculation and conjecture." *Gairola v. Va. Dep't of Gen. Servs.*, 753 F.2d 1281, 1285 (4th Cir. 1985) (citations & internal quotation marks omitted).

This Court also reviews whether there was sufficient evidence of "actual malice" de novo. *See Harte–Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 685 (1989). A public official cannot "recover[] damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times*, 376 U.S. at 279–80; *see also CACI*, 536 F.3d at 293. Under the actual malice standard, a plaintiff must prove that the defendant had a particular,

16

subjective state of mind at the time the statements were made. *See St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) ("There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication."); *CACI*, 546 F.3d at 300 ("[T]here must be sufficient evidence to permit the conclusion that the defamatory statement was 'made with [a] high degree of awareness of [its] probable falsity.' " (quoting *Garrison*, 379 U.S. at 74) (alterations in original)). "The Supreme Court has made 'clear that reckless conduct is not measured by whether a reasonably prudent [person] would have published [or spoken], or would have investigated before publishing [or speaking].' " *CACI*, 546 F.3d at 300 (quoting *St. Amant*, 390 U.S. at 731) (alterations in original). "[T]he failure to investigate, 'where there was no reason to doubt the accuracy of the sources used . . . cannot amount to reckless conduct.' " *Church of Scientology Int'l. v. Daniels*, 992 F.2d 1329, 1334 (4th Cir. 1993) (quoting *Reuber*, 925 F.2d at 716). However, "[r]ecklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." *CACI*, 546 F.3d at 300 (quoting *Fitzgerald v. Penthouse Int'l, Ltd.*, 691 F.2d 666, 670 (4th Cir. 1982)).

Horne asserts that WTVR published the news story with "actual malice" by publishing the story with reckless disregard for the truth. Horne's arguments can be distilled as follows: (1) that WTVR failed to properly investigate whether the felon lied on her job application, and, (2) alternatively, that WTVR intentionally ignored a better story—that the superintendent knew of her felony and hired her in violation of state law—in order to avoid having to redo the completed story implying she lied. Neither

17

argument is convincing.

We conclude that Horne did not provide sufficient evidence of "actual malice" to allow this claim to proceed to a jury. WTVR had a history of working with Browder and receiving accurate information from him on dozens of stories over several years, weighing in favor of his veracity and giving credence to Covil's testimony that he believed Browder implied that Horne lied on her application, and that he believed Browder was telling the truth. Covil also testified that the confidential source who provided the initial tip for this story was a trusted source. Thus, with "no reason to doubt the accuracy of the sources used," WTVR's failure to investigate every potential lead "cannot amount to reckless conduct." *Church of Scientology Int'l.*, 992 F.2d at 1334 (quoting *Reuber*, 925 F.2d at 716); *see also CACI*, 546 F.3d at 300.

Horne's argument that WTVR intentionally ignored the better story also fails. Her assertion hinges on the claim that the email from the anonymous source caused WTVR to entertain doubts as to the truth of the story that the felon lied on her application, and doubts as to Browder's credibility, either of which she claims is sufficient for finding actual malice. However, within the context of the story's creation from trusted sources, the email from the anonymous source does not provide "*obvious* reasons to doubt the veracity of the informant or the accuracy of his reports" because it can be read as supporting the narrative of a felon being hired after lying on the application. *CACI*, 546 F.3d at 300 (emphasis added) (quoting *Fitzgerald*, 691 F.2d at 670); *see also Rosenblatt*, 383 U.S. at 79 (rejecting a reading of a newspaper column as implying peculation when it "could also be read, in context, merely to praise the present administration").

18

Horne also argues that the email from Barnhouse, WTVR's News Director, telling Covil to pursue the story and find out the name of the felon, and the email from Bergazzi, an Executive Producer at WTVR, telling Covil to ask his source whether the underlying felony was from Tennessee, both indicate that WTVR either should have investigated further or had doubts about the truth of the story. These emails do not provide clear and convincing evidence that the allegedly defamatory statements were "made with [a] high degree of awareness of [its] probable falsity." *CACI*, 546 F.3d at 300 (quoting *Garrison*, 379 U.S. at 74). Additionally, as both parties have noted, the truth is a better news story—that the school system knowingly hired a felon in violation of state law. Without evidence to the contrary, common sense counsels that WTVR did not purposely avoid researching the better story to simply avoid having to "re-do their already completed story." Appellant's Br. 51.

In sum, Horne has not submitted evidence indicating that WTVR acted with reckless disregard for the truth, or evidence that WTVR entertained any doubts as to the veracity of the story or Browder's credibility. Thus, even viewed in the light most favorable to Horne, no reasonable jury could find, by clear and convincing evidence, that WTVR made the defamatory statements with "actual malice." Therefore, we hold that the district court did not err in granting WTVR's motion for a directed verdict.

Because our affirmance of the district court's grant of WTVR's motion for a directed verdict is dispositive in this case, we decline to address WTVR's argument on cross-appeal that the district court erred in denying its motion for summary judgment because the news story was not reasonably capable of defaming Horne, *see Hatfill v. N.Y.*

19

*Times Co.*, 416 F.3d 320, 330 (4th Cir. 2005); *Carwile v. Richmond Newspapers, Inc.*, 82 S.E.2d 588, 591 (Va. 1954), and decline to address WTVR's contention that the district court erred in determining that the fair report privilege did not apply to the news story, *see Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1097 (4th Cir. 1993) (stating that the fair report privilege applies to "press reports of official actions or proceedings, so long as the report was accurate and either complete or fairly abridged" (citing Restatement (Second) of Torts § 611 (1977))).

## C.

Horne also asserts that the district court erred in denying her pre-trial motion to compel WTVR to disclose the identity of its confidential source. We again disagree. This Court reviews a denial of a motion to compel for abuse of discretion. *See Ashcroft v. Conoco, Inc.*, 218 F.3d 282, 287 (4th Cir. 2000).

This Court recognizes a qualified "journalist's privilege" that protects the media from revealing confidential sources, including in public official defamation cases. *See LaRouche v. Nat'l Broad. Co., Inc.*, 780 F.2d 1134, 1139 (4th Cir. 1986); *see also Brown v. Commonwealth of Virginia*, 204 S.E.2d 429, 431 (Va. 1974). A plaintiff must satisfy the three-part balancing test set forth in *LaRouche* to overcome this privilege: "(1) whether the information is relevant, (2) whether the information can be obtained by alternative means, and (3) whether there is a compelling interest in the information." *LaRouche*, 780 F.2d at 1139 (citation omitted); *see also Ashcroft*, 218 F.3d at 287 (describing the "reporter's privilege" and applying the test from *LaRouche*).

Horne argues that the district court should have compelled WTVR to reveal the

confidential source that provided Covil the initial tip that a felon was hired and then fired by the school system. The district court denied the motion after determining that Horne failed to provide a sufficiently compelling interest in the source's identity because "[t]he plaintiff admits her conviction, her hiring, and her firing," and "[h]er allegations of defamation come not from the underlying facts provided by the confidential source, but from how the defendant told the story." J.A. 592. Horne counters by alleging that revealing the identity of the confidential source may provide evidence of "actual malice" in that the source may have known that Horne did not lie on her job application or the source may be untrustworthy. However, there is no evidence that disclosure of the source would reveal this information—it is merely speculation.

Therefore, we conclude that the district court did not abuse its discretion in denying Horne's motion to compel disclosure of the confidential source because Horne did not provide a sufficiently compelling interest in the identity of the source to overcome the competing First Amendment concerns.

### III.

For the aforementioned reasons, the judgment of the district court is hereby

*AFFIRMED*.

21